## CENTRAL OF GEORGIA RAILWAY COMPANY *v.* RAY.

1. A railroad company, relatively to its employees, is bound to exercise ordinary care in furnishing machinery equal in kind to that in general use, and reasonably adapted to the uses to which it is put; and its liability in this respect is limited to a failure to discharge this duty. It is therefore erroneous to charge the jury that if they believe that the engine, which killed the plaintiff's husband, for whose homicide the plaintiff sues for damages, was of the kind in general use, and reasonably suited for the business for which it was in use, then it would be for them to determine whether or not, "*in having one of that character,*" the railroad company had exercised ordinary care and diligence.

2. The judge may refer, in his charge on the subject of estimating damages for the value of a life, to the decrease in the earning capacity which naturally results from advancing age, probable loss of employment, and inability to constantly labor, and secure continuous work. Juries are presumed to be as cognizant of the common phenomena of human experience as the judge; and if their attention is specially desired to be directed thereto, a timely written request should be made.

3. The other attacks on excerpts from the charge relate more to the form of expression than to a misapprehension of the correct rules of law; and as the attention of the trial judge has been called thereto, they probably will receive due consideration on the next trial.

ATKINSON, J., dissenting. In respect to the character of the machinery employed by the railroad company, the whole duty of the company to the plaintiff's husband was not necessarily discharged by employing an engine and tender "equal in kind to that in general use and reasonably adapted to the uses" in which they were employed. The qualification to the charge mentioned in the first headnote did not authorize a reversal of the judgment.

*Argued June 11,—Decided August 16, 1907.*

Action for damages. Before Judge Felton. Bibb superior court. January 7, 1907.

Mrs. Emma Ray brought her action for damages against the Central of Georgia Railway Company for the negligent killing of her husband; and the jury returned a verdict in her favor. Her petition alleged, that her husband was, at the time he was killed, in the employment of the railway company, and engaged in work with an engine used at the time in switching cars in the yards of the company at Macon, Georgia. It was his duty to go with the engine and change the switches, that the engine might pass from one track to another in moving cars in the yard. While engaged in changing a switch, that the engine with which he was at work

might change to another track, and just as he had straightened himself up and partially turned around, he was struck by another engine of the company, thrown upon the track, and killed. The nature of the work required that it should be done hurriedly. The switch was what is known as a ground-switch, and was worked by a lever which was kept in place by a heavy weight; and in order to change it it was necessary that the deceased should place himself in a stooping position, lift the lever and weight attached from the ground, and throw it to the opposite side of the switch. The switch in question was located within about ten inches of where an engine passing on the next track would extend. At the time he was engaged in this work his back was to the engine which was approaching him from the rear, and he did not and could not have discovered the approach of the engine before he was struck by it. He was or should have been in plain view if proper lookout had been kept by persons in charge of this engine; and if proper care had been used, his position of danger could have been discovered by those in charge of the engine, whose duty it was to have discovered him and stopped in time to prevent the injury, or at least to have given him warning of its approach. No bell was rung or whistle sounded to give her husband notice of the engine's approach, and at the time her husband was killed the engine was being run at from ten to fifteen miles an hour, which was a dangerous rate of speed at that place, and in violation of a valid municipal ordinance of the City of Macon, which made it unlawful to run an engine at this place at a greater rate of speed than five miles an hour, and by reason of the violation of this ordinance her husband was run down and killed. The deceased was entirely free from fault and his death was caused entirely by the negligence of the agents and employees of the railroad company in placing the switch so near the track; and in running upon him without any warning whatsoever; and in violation of the city ordinance. The earning capacity and expectancy of deceased were also set forth. By an amendment the plaintiff alleged that the engine which struck the deceased was so constructed that it was impossible for the employees running the engine backwards to keep a lookout or observe the track, because the tender was so high and wide that it completely obstructed and shut out the view of the track from those in charge of the engine, and made it impossible for

them to see any one upon the track in the rear of the tender when the engine was run backwards. The engine which struck her husband was being run backwards, and no proper lookout was kept on the rear of the engine to give warning of its approach or give notice to those in charge of the same of its close proximity to. persons on the track. At the time the deceased was killed several engines of defendant were being run in that portion of the yard, and the employees engaged in work in this yard were compelled to be constantly upon the tracks of the company in this yard. This switch was negligently placed by the defendant so near the main line or lead track in the yards as to make it dangerous to the employees of the company who were required to work therein, for the reason that employees engaged at that switch were always in danger of being struck by engines and cars of the company running along the adjacent track; and this switch was unnecessarily and negligently placed in this dangerous position, and maintained there, in utter disregard to the safety of its employees who were called upon to discharge their duties in this yard. It was the duty of the company to furnish the deceased a safe place in which to work, and in placing this switch in such dangerous proximity to this track the company failed in this duty. The company, knowing of the dangerous position of the switch, and that the deceased would be called upon, in the discharge of his duties, to work at this switch, owed him the duty of giving him warning of the approach of its engine at that time and place. This switch was so placed that by reason of a curve in the track at that place the view was obstructed by cars standing in the yard, making it impossible to discover an approaching train until it was within a very few feet of the switch.

The defendant denied the alleged negligence; and to the verdict and judgment in the plaintiff's favor it filed a motion for a new trial, which was overruled, and it excepted.

*John I. & J. E. Hall* and *Wimberly & Jordan,* for plaintiff in error.

*Joseph H. Hall, John R. Cooper,* and *Warren Roberts,* contra.

EVANS, J. (After stating the facts.) In the amendment to the petition it was alleged that the engine which killed the plaintiff's husband was so constructed that it was impossible for the employees running the engine backwards to keep a lookout, or

observe the track, because the tender was so high and wide that it completely obstructed and shut out the view of the track from those in charge of the engine, and made it impossible for them to see any one upon the track in the rear of the tender, when the engine was being run backwards. From the instruction given on this feature of the plaintiff's case it is quite evident that the trial judge construed (and properly so) this allegation as an averment that the engine was not adjusted to the work of switching cars, where the engine was generally employed in moving both backward and forward, and the employment of an engine so constructed might be considered by the jury on the issue of the exercise of ordinary care by the defendant in the operation of an engine so constructed. The court charged: "Relatively to that question as to the construction of the engine, if the jury believe that the engine was of the kind in general use and reasonably suited to the business for which it was in use, then it would be for you to determine whether or not, in having one of that character, they had exercised ordinary care and reasonable care and diligence." This charge is alleged to be erroneous, because if the jury should believe that the engine was of a kind in general use, and reasonably suited to the business for which it was in use, they should not have been instructed that they might infer that the mere having an engine of this description was a failure to exercise ordinary care in the selection of one of this type. We think the charge is open to the criticism made of it. A railroad company, relatively to its employees, is bound to exercise ordinary care in furnishing machinery equal in kind to that in general use, and reasonably adapted to the uses to which it is put. *Ala. Mid. Ry. Co.* v. *Guilford,* 119 *Ga.* 523 (46 S. E. 655) ; Reed *v.* M., K. & T. Ry. Co., 94 Mo. App. 371 (68 S. W. 364). Its liability in this respect is limited to a failure to discharge this legal duty. *Atla. Air-Line Ry. Co.* v. *Ray,* 70 *Ga.* 674. This instruction was calculated to harm the defendant. The plaintiff charged the defendant with negligence: (1) in selecting and using this type of engine, and (2) in operating it without lookouts. The defendant contended in reply that it had selected a type of engine such as was in general use, and reasonably suited to the use to which it was put; and that the plaintiff's husband knew it operated this engine without lookouts or warnings, and that his

death resulted because he was at a place where it was not his duty to be, and from his own failure to exercise ordinary care for his safety. The jury may have believed, under the evidence and the instruction of the court, that the defendant was not negligent in the operation of the engine; yet they were told, in effect, that even if the engine was of standard type, and was reasonably suited to the use to which it was put, still they might find the defendant negligent "*in having* one of that character."

2. Complaint is made of an omission of the court, when charging on the subject of damages, to call the attention of the jury to the decrease in the earning capacity which naturally results from advancing age, probable loss of employment, inability to labor and to secure work. In the process of reaching a correct result from the evidence, juries may take into consideration such universal experiences in human life, as criteria in weighing the evidence in the particular case. The judge may refer in his charge to such matters as the plaintiff in error complains he omitted in this case. *Fla. C. R. Co.* v. *Burney*, 98 *Ga.* 1 (26 S. E. 730). The jury are presumed to be as cognizant of these common phenomena of human experience as the judge; and if their attention is specially desired to be directed thereto, a timely written request should be made.

3. The attack on the other charges complained of relates more to the form of expression than to a misapprehension of the correct rules of law; and on the next trial the judge, in all probability, will so adjust his expressions as to relieve them of the criticism made in the assignments of error.

*Judgment reversed. All the Justices concur except Atkinson, J., who dissents.*